## EDWARD M. L'ENGLE, APPELLANT, VS. JOHN H. REED, APPELLEE.

1. A deed conveying real estate of the husband. signed by him and his wife, and acknowledged by the wife alone, separate and apart from her husband, that she signed the same voluntarily and without any compulsion, apprehension or fear from her husband, is not such proof of the execution of the deed as will admit to record as being duly acknowledged or proven according to law.

2. A certified copy of the record of a deed signed by husband and wife, purporting to convey real estate of the husband, and acknowledged by the wife alone, separate and apart from her husband, that she signed the deed voluntarily without any compulsion or fear from her husband, is inadmissible in evidence as proof of the existence and due execution of the deed.

3. Where a grantor in a deed appears before a proper officer and declares that he not only signed the deed, but that he also at the same time acknowledged the deed as one executed by him for the purpose therein stated, in connection with the attestation clause of the deed that the grantor thereunto set his hand and seal, is such a compliance with the statute as will admit the deed to record as being duly acknowledged.

4. The rule in ejectment that a plaintiff must recover upon the strength of his own title, and not upon the weakness of his adversary's title does not require him to exhibit a perfect chain of title from the original source, as against one wrongfully in possession.

5. A plaintiff in ejectment must show a better title than that of defendant, or a prior actual possession to that of defendant or a good conveyance to himself from one in actual possession and prior to that of defendant, in order to put the defendant to the necessity of supporting his possession by a title superior to one of naked possession.

Appeal from the Circuit Court for Duval county

The facts of the case are stated in the opinion of the court.

*C. P. & J. C. Cooper* for Appellant.

*Hartridge* and *Young* for Appellee.

MABRY, J.:

This is a suit of ejectment instituted in the Duval Circuit Court by appellee as plaintiff in the court below against E. M. L'Engle, appellant, as defendant below, on the 23rd day of June, 1885, to recover possession of lots four, five and eight, in block 18, and the southwest quarter of lot two, in block 11, known and designated on the map or plan of a tract of land known as McIntosh's addition to the town of LaVilla, said map or plan being recorded in book "A G," pages 768, 769, of the records of deeds of Duval county, State of Florida, and for mesne profits.

The defendant in the court below filed the plea of the general issue.

By consent of parties this cause was, at the Spring term, 1887, of the Duval Circuit Court, referred to Loton M. Jones, Esq., for decision.

The cause was submitted to the referee by the respective parties on June 27th, 1887, and after hearing the evidence introduced, the referee, on the 26th day of September, 1887, rendered judgment in favor of the plaintiff below for the possession of the southwest

quarter of lot two, in block 11, lot eight, in block 18, and all of lot four, in block 18, which lies east of a line drawn parallel with the western line of the McIntosh addition, said line being 112 feet to the eastward of the western line of the said McIntosh addition, all according to the map and plan of the McIntosh addition to the town of LaVilla, which said map or plan is recorded in book "A G," pages 768, 769 of the records of Duval county, Florida, and the costs of this suit.

On the same day of the rendition of the judgment defendant below made a motion before the referee for a new trial on the following grounds: 1st. The court erred in admitting in evidence deeds from Hilliard Jones to Daniel Hanson, and from Hanson to Bingham, and from Bingham to McIntosh, offered in evidence by plaintiff. 2d. The findings and judgment of the referee were contrary to law. 3d. The findings and judgment of the referee are contrary to the evidence in this case. 4th. There was not sufficient evidence to base the referee's findings upon. This motion was overruled by the referee, and judgment entered against defendant below, from which he appeals to this court and assigns the following errors: 1st. The referee erred in admitting in evidence the deed from Hilliard Jones to Daniel Hanson. 2d. The referee erred in admitting in evidence the deed from Daniel Hanson to Charles K. Bingham. 3d. The

referee erred in admitting in evidence the deed from Charles K. Bingham to Andrew J. McIntosh. 4th. Referee erred in admitting in evidence the deed from A. J. McIntosh to John H. Reed. 5th. The referee erred in admitting in evidence the testimony of F. F. L'Engle, pages 63 and 64 of record as to possession of Hilliard Jones. 6th. Referee erred in admitting testimony of J. F. LeBaron, page 75 of the record, as to his opinion that exhibits B, C and D cover land in exhibit A, 7th. Referee erred in admitting the testimony of W. S. Walker, pages 176 and 177 of record, as to statements, sales, &c., and alleged acts of possession. 8th. The referee erred in his findings of fact and law, as found and reported in this cause. 9th. The referee erred in overruling appellants motion for new trial herein on the grounds therein stated, and erred in giving final judgment herein rendered. 10th. The judgment in this case is contrary to the law and the evidence in the cause.

The chain of title by which the appellee, plaintiff in the court below, claims the land described in the declaration is as follows : Deed from Joseph S. Baker to Hilliard Jones; deed from Hilliard Jones to Daniel D. Hanson ; deed from Daniel D. Hanson to Charles K. Bingham ; deed from Charles K. Bingham to Andrew J. McIntosh, and deed from Andrew J. McIntosh to John H. Reed, plaintiff below. The appellant, defendant in the court below, claims title to the land in con-

troversy by deed from Joseph S. Baker to F. F. L'Engle, and by deed from F. F. L'Engle to himself as trustee.

It is admitted that Joseph S. Baker was at one time seized and possessed of the land in question, and both parties claim title from him.

To maintain his cause before the referee, the plaintiff below, appellee here, offered in evidence a certified copy of the record of the deed from Joseph S. Baker to Hilliard Jones. From this certified copy it appears that the deed bears date the 18th day of August, 1853. The description of the land in the deed from Joseph S. Baker to Hilliard Jones is as follows: "All that piece or parcel of land lying and being and situate in the county of Duval and State of Florida, containing by estimation fifteen acres, more or less, and bounded as follows, to-wit: on the north by lands of said Jones and William D. Smith, on the east by a street 30 feet wide, the right and title to which the party of the first part reserve to themselves, which said street separates from lands now claimed by I. D. Hart, on the south by the Alligator road, and on the west by a street 30 feet wide, which separates said tract or parcel of land from lands owned by the party of the first part, which also retain the right and title to said street."

Plaintiff below next introduced in evidence a certified copy of the record of the deed from Hilliard Jones to Daniel D. Hanson. This deed, as appears from the cer-

tified copy of the record, bears date the 12th day of December, 1865. Defendant below objected to the introduction of this certified copy because the deed was not properly acknowledged or proven for record. We will postpone the consideration of this objection until we present the phase of the case as to the location of the lots in question, with respect to the two chains of title.

The description of the land in the deed from Hilliard Jones to Daniel D. Hanson, so far as it relates to the land in question, is as follows: "All that certain piece or parcel of land situate and being in the county of Duval, in said State, lying near to, and to the northwest of the city of Jacksonville, in said county of Duval, and described as follows, to-wit: beginning at a point where the western boundary line of the Hogan or Taylor grant crosses the King's road, and running on said road north fifty-five (55) degrees, west 10 chains and 15 links to a post, and from thence south 35 degrees, west 23 chains and 28 links to the Lake City road to a post, thence on said last mentioned road south 82 degrees, 21 chains and 90 links to a post in the west boundary line of the said Hogan or Taylor grant, thence north along the said line 16 chains and 90 links to the place of beginning, containing 29.38 acres, more or less."

Plaintiff below next introduced in evidence a certified copy of the record of a deed from Daniel D. Hanson to Charles K. Bingham. It appears from the re-

cord introduced that this deed was dated the 31st day of May, 1867.   Objection was made by defendant in the court below to the introduction of this certified copy, on the ground that the same was not properly acknowledged for record, but this objection will be considered later.   The description of the land in the deed from Hanson to Bingham, in so far as it relates to the *locus in quo*, is the same as in the deed from Jones to Hanson above recited.

Plaintiff below next introduced in evidence a deed from Charles K. Bingham to Andrew J. McIntosh, and which bears date July 10th, 1880.   The land described in this deed is the same as that given above in the deed from Jones to Hanson, and in the deed from Hanson to Bingham.   A deed from Andrew J. McIntosh and wife to John H. Reed was next introduced in evidence by plaintiff below.

In the deed from McIntosh to Reed, bearing date the 4th day of June, 1884, the following extract from it will show the description of land conveyed, and also the interest in same, to-wit;   "Witnesseth that the said parties of the first part, in consideration of the sum of one dollar to them duly paid, have sold, and by these presents do grant and convey to the said party of the second part, his heirs and assigns, one undivided two-thirds part of all those tracts or parcels of land situate at the northwest of the city of Jacksonville, county of Duval, and State of Florida, known and described on a

map by Griffin & Walker in 1881 for said Andrew J. McIntosh and John H. Reed, and which map was filed in the office of the clerk of the county of Duval the—— day of June, 1881, viz: Lots 1 and 2, block 12; lot 2, block 13; lot 2, block 6; lot 4, block 9; lot 3, block 9; lots 3 and 5, in block 10; lot 2, block 10; lot 2, block 11; lots 1, 4 and 5, block 18; lot 8, block 11; lot 8, block 18; it being understood that this grant conveys said interest in said lots, and each of them, to the extent and size as laid down on said map, and not otherwise."

The descriptions in the deeds from Joseph S. Baker to F. F. L'Engle, and from F. F. L'Engle to E. M L'Engle, trustees, introduced in evidence by defendant below, is as follows: Beginning at a point on the Black creek or Alligator road where the same is crossed by the western boundary of lands belonging to I. D. Hart, the same point being the southeast corner of lands belonging to Hilliard Jones, thence west 10 degrees, fifty-five minutes north by and along said road 1173 feet to a stake marked with a cross and a chop, thence north 38 degrees, forty-five minutes east along the western boundary of lands belonging to Hilliard Jones 1324 feet to a stake marked with two crosses and two chops, on the southern edge of the St. Mary's or King's road, the same point being the northwestern corner of lands belonging to Hilliard Jones, thence by and along the

23

said St. Mary's or King's road north fifty degrees and forty-five minutes west to a stake placed on the southern edge of said road at a point where a line running north ten degrees east from the northwestern corner of lands belonging to the estate of James C. Jacques would strike or intersect with said St. Mary's or King's road, thence by and along the said last described line to the northwestern corner of lands belonging to the estate of James C. Jacques, thence east ten degrees south to northwestern corner of lands belonging to the estate of James C. Jacques, thence north ten degrees west twelve feet to the northwestern corner of lands belonging to Paran Moody, thence east ten degrees south along the northern boundary line of lands belonging to Paran Moody, the party of the second part and Benjamin Hopkins, to the above mentioned western boundary line of lands belonging to I. D. Hart, thence by and along said boundary line seven hundred and sixty-seven feet to the place of beginning.

From the descriptions given above in the deeds constituting the two chains of title, it is apparent that it cannot be ascertained from the deeds themselves where the lots in controversy are situated. It is contended on the part of the appellant that the lots in question are embraced in the description of the lands in his chain of title; and on the contrary, appellee claims that said lots are contained within the description of lands in his title.

On the trial of the issue before the referee considerable testimony in the nature of maps, surveys, deeds relating to the lots in question and to lands contiguous thereto, and parol testimony of surveyor and others, was introduced.

The contention presented by the record as to the location of the lots when analyzed, resolves itself into a question as to the proper boundary lines of the land sold by Joseph S. Baker to Hilliard Jones. Jones purchased from Baker in 1853, and F. F. L'Engle purchased from Baker in 1858, and the descriptions in both of these deeds refer to lands of I. D. Hart. The Hart lands referred to in the deeds embraces the Hogan or Taylor grant, which was situated east of, and joined the land sold by Baker to Jones. On the question of the location of the lots, appellee's contention is, that a line run by Hart in 1856 as his west boundary line, and designated in the evidence as the "Hart Cedar post line," must be taken as the correct line in locating the Jones purchase. It is claimed that this line was run before L'Engle made his purchase, and was then known and accepted by him as correct. Appellant insists that the "Cedar post line" is not the correct line, and that the true line between Hart and Baker at the time of Jones' purchase was some 225 feet further east of this "Cedar post line." The referee decided that the "Cedar post line" was the one to control in this case, and that the lots described in the judgment are embraced in the description of land in appellee's chain of title.

We will now consider the errors assigned by appellant, or such of them as we deem it necessary to consider.

Defendant below, appellant here, objected to the introduction in evidence of the certified copy of the record of the deed from Hilliard Jones to Daniel D. Hanson. The objection is based upon the allegd fact that the deed had not been properly acknowledged or proven before it was admitted to record, and hence not duly recorded according to law. It appears from the said certified copy that Elizabeth Jones, wife of said Hilliard Jones, whose name appears as grantor in the deed, on a separate examination apart from her husband, acknowledged that she *signed* the said deed voluntarily, without any compulsion, apprehension or fear from her said husband. This acknowledgment was taken in December, 1865. Elizabeth Jones signed ths deed, and her name appears in the body of it. On her examination alone the deed was admitted to record, and appellant says that the deed was not properly acknowledged under the statute, and hence the certified copy of the record should have been ex cluded. Prior to the adoption of the constitution of 1885, (to say nothing of the act of February, 12th, 1885, Chapter 3591, which is inmaterial to notice,) a certified copy of the record of a deed duly recorded was not admissible in evidence without proof of the execution of the original deed. Skinner vs. Pinney, 19 Fla., 42. Under the Constitution of 1885, Art. XVI, sec. 21, a certified copy of the record of a deed

that has been or that may be recorded according to law, shall be admitted as *prima facie* evidence of the existence and due execution of the deed. The record of the deed, in order to impart to a certified copy of it this effect, must be made according to law. It is provided by statute that in order to procure the recording of such conveyance, the execution thereof by the party making the same shall be acknowledged by such party, or shall be proved upon oath by at least one of the subscribing witnesses thereto, before the officer authorized by law to record the same, or before same judicial officer of this State. McClellan's Digest, sec. 9, p. 216. The owner of the land in this case was Hilliard Jones, and the interest the wife had was a right to dower. In her acknowledgment, separate and apart from her husband, she says that she signed the deed. Here the foundation for introducing a certified copy of the record of the deed was laid, and the only question is as to the proper proof of the execution of the deed. Jones did not acknowledge the deed at all, and his wife simply acknowledged that she signed it. We are of opinion that this deed was not properly acknowledged for record, and that the introduction of the certified copy of record in evidence was error. Edwards vs. Thom., 25 Fla., 222; Bell vs. Kendrick, Ibid, 778; Kendrick vs. Latham, Ibid, 820. For the same reason appellant as defendant below, objected to the introduction in evidence of the certified copy of the record of the deed from Daniel B. Hanson to Charles K. Bingham. We think this ob-

jection is not well taken. This was a trust deed, and both the grantor and grantee undertook to acknowledge it. The attestation clause recites that the first and second parties "have hereunto set their hands and seals this 31st day of May, A. D., 1867." The certificates of the Justice of the Peace as to the acknowledgement of this deed is as follows:

STATE OF FLORIDA, }
   Duval County.   }

Personally appeared before me, a Justice of the Peace, Daniel D. Hanson, grantor of the foregoing, in and for said county, and after being duly sworn, declares that he signed and acknowleded the foregoing deed for purposes therein named.

A. W. DaCosta,<br>Justice of the Peace.

Our understanding of this certificate is that the grantor declared before the Justice of the Peace, not only that he signed the instrument, but that he also at the same time acknowledged the deed as one executed by him for the purposes therein stated. This acknowledgement taken in connection with the attestation clause of the deed, is such a compliance with the statute as will admit this deed to record as being duly acknowledged or proven. Einstein's Sons vs. Shouse, 24 Fla., 490; 5 So. Rep., 380, and authorities there cited.

Defendant below made further objections to the introduction of the other deeds offered in evidence by plaintiff below, but the conclusion we have reached in reference to the certified copy of the record of the deed

from Hilliard Jones to Daniel D. Hanson produces a hiatus in appellee's chain of title, and we will now enquire what effect this will have upon his recovery here. It is admitted on the record that Joseph S. Baker was seized and possessed of the land in question and that both parties claim title from him. Plaintiff below, appellee here, introduced in evidence a deed from Joseph S. Baker to Hilliard Jones conveying, as was claimed, the land in question, but on account of the defective record of the deed considered above, no conveyance of said land is shown from Jones to anyone. There is, therefore, a failure on the part of plaintiff below to show a perfect chain of title back to the common source. A familiar rule in ejectment is, that the plaintiff must recover upon the strength of his own title, and not upon the weakness of his adversary's title. It must be observed, however, that this rule does not require a plaintiff to exhibit a perfect chain of title from the original source, as against one wrongfully in possession. If it did, one without a shadow of title or right might take possession of and successfully hold the estate of his neighbor, whose title has a defective link in it. "The application of this principle is not to be understood as requiring that a plaintiff in making out his title shall be compelled in the first instance to trace the chain back to the first grantor, but only that he shall exhibit so much as will put the defendant to the support of his possession by a title superior to one of a mere naked possession." This principle was recognized and illustrated in the case of Hartley vs. Fer-

rell, 9 Fla., 374. Here a Sheriff's deed made by virtue of a judicial sale of the property of a judgment debtor was offered in evidence together with proof that the judgment debtor was in possession of the property at the time of sale. Objection was made to the introduction of this deed, unless title to the property was shown in the judgment debtor. This objection was overruled and plaintiff recovered on the strength of this title, which was sustained on appeal. We take the precaution to say that by referring to this case we do not intend to approve the apparent holding here that a Sheriff's deed can be introduced in evidence without showing the judgment and execution upon which it is based. The principle therein announced, however, that a plaintiff must recover upon the strength of his own title, and in exhibiting this he need show only so much as will drive a defendant to the support of his possession by a title superior to one of mere naked possession is, we think, sound.

Upon the doctrine announced in the cases of Hartley vs. Ferrell, 9 Fla., 374, and Seymour vs. Creswell, 18 Fla., 29, and other cases, we think a plaintiff in ejectment, by showing a prior possession to that of defendant, or by showing a good conveyance to himself from one in actual possession, and prior to that of defendant, puts him to the necessity of supporting his possession by a title superior to one of naked possession. This is not inconsistent with the rule that plaintiff must recover upon the strength of his own title. But unless a plaintiff in ejectment can show a perfect title, or an

actual possession in himself or in his grantor, prior to that of defendant, he cannot recover.   McCall vs. Doe *ex dem.* Prior, 17 Ala., 533 ; Russell vs. Erwin's Administrator, 38 Ala., 44 ; Nagle vs. Macy, 9 Cal., 426 ; Keane vs. Cannovan, 21 Cal., 291 ; Bates vs. Campbell, 25 Wis., 613 ; Newnam's Lessee vs. City of Cincinnati, 18 Ohio, 323 ; Tapscott vs. Cobbs, 11 Gratt., 172 ; Clute vs. Voris, 31 Barb., 511.

It is clear that plaintiff below, appellee here, did not exhibit a perfect title to the common source, and we think it is clear also that he did not show any prior actual possession or connect himself with any prior actual possession in any predecessor in title.   So far as appellee is concerned, it is not shown that he or any of his predecessors in title ever cultivated or improved the land in question, or ever protected it by substantial enclosurs, or has used it for the supply of fuel, or of fencing-timber for the purpose of husbandry, or for the ordinary use of an occupant.   All that is shown in the record in reference to any possession on the part of appellee or his predecessors is, that William S. Walker, as agent for McIntosh, had the land staked off and a plat of it made in 1881, and this agent frequently went on the land for the purpose of selling lots of it, and did make many sales after the land was platted.   None of the lots were enclosed or otherwise improved than by staking them out.   As to the lots in question it is not shown that either appellee or his predecessors ever had any actual possession of them further than the mapping or platting them, and this is not sufficient prior

possession of the property as against defendant's actual possession.   Seymour vs. Creswell, 18 Fla., 29.

The result is, that plaintiff below, appellee here, did not present such a case as to put the defendant to the support of his possession by superior title to that of naked possession, and the award of the referee cannot be sustained.

In view of the conclusion we have reached it will be unnecessary for us to consider the finding of the referee, that the lots in question are, as a matter of fact, embraced in appellee's chain of title.   If we were to concede that the decision of the referee in that respect is correct, it would result from what we have already here decided, that appellee has not shown such a title as will entitle him to recover on it.

The judgment is reversed, and a new trial awarded.