MARY E. TURKNETT, *Plaintiff in Error,* v. JAMES E. JOHNSON, *Defendant in Error.*

Opinion Filed November 11, 1913.

1. A plaintiff in ejectment cannot rely upon a conveyance to himself executed by a party who had no legal title to the property and was never in possession of it.

2. In an action of ejectment to recover the possession of about 33 acres of unimproved land on the theory that plaintiff was in possession of said land when the defendant took possession of it, and the only evidence of prior possession of plaintiff is that he had caused to be constructed on one corner of the land a woven wire fence enclosing about 75 feet square, with no gate or other method of ingress or egress, no other description of the fence being given indicating it to be a substantial

enclosure, and there has been no sort of cultivation of any part of the land by plaintiff, no house built on it by him, and no one occupying any part of the tract of land as his tenant or otherwise, such facts and conditions do not show such prior possession on the part of the plaintiff as entitle him to recover the possession of the land.

Writ of error to Circuit Court, Duval County; R. M. Call, Judge.

Judgment reversed.

*Harwick & Jennings,* for Plaintiff in error;

*Baker & Baker,* for Defendant in error.

HOCKER, J.—The defendant in error, who will be referred to as the plaintiff, brought an action of ejectment against the plaintiff in error, who will be referred to as the defendant, in the Circuit Court of Duval County, to recover the possession of about 33 acres of land in the western part of the southeast quarter of southwest quarter of Sec. 7, Tp. 3 S., R. 26 E, being that part of the said quarter quarter-section lying west of the Orange Park road, which runs in a northwesterly direction through the same. The land is described by metes and bounds in the declaration. On the trial verdict and judgment was rendered for the plaintiff, and the defendant sued out a writ of error.

On the trial the plaintiff introduced a deed of bargain and sale to the N½ of S. W.¼, S. E.¼ of S. W.¼ Sec. 7, Tp. 3, S. R. 26 East, executed to him by C. B. McClenny and Ada McClenny, his wife, which deed was acknowledged by them on June 3rd, 1909, and recorded on June 19th, 1909, To the introduction of this deed the defendant objected

on the ground, among others, that there was no evidence that the grantors in the deed were at the time of its execution, or ever had been in possession of the land. These objections were overruled, and the defendant excepted. No other documentary evidence of title was offered by plaintiff.

Plaintiff testified that he was familiar with the land sued for; he had seen it many times. It is that part of the property west of the Orange Park road. About the first of May, 1909, he had Mr. Spencer, who was in his employ, build a fence enclosing a little part of the forty that lies West of the road. The land was all vacant at the time except a little field down toward the South line of this part of the forty. It was fenced with a rail fence. He had a surveyor locate the lines before putting up the fence. Witness was asked his intent when he did this, which question was objected to by defendant, but permitted by the court, and an exception noted. He answered: "I had bargained and paid for a deed, and expected to get it sometime soon, and thought I might afterwards have a part of the forty cultivated, and maybe put up a little house and let some one live there. I think it was about sixty days after I put up the fence in the corner that Mrs. Turknett fenced the entire tract." The building of the former fence was done according to his instructions. He paid for the posts and wire and sent them out. He bought 300 feet of wire and gave instructions to fence a little tract seventy-five feet square. The building of a fence seventy-five feet square, leaving no gate or other entrance, was according to his instructions. He did not know what he might do with the land in the future— might have made more fences and some clearing, or might have cut up the land and sold it in tracts. It was about sixty days after he built his fence that Mrs. Turknett

fenced in the whole tract. He never endeavored to do anything more with regard to fencing or clearing than what was done at the time his fence was built. He did not know when he fenced in this little corner that Mrs. Turknett claimed the land, and did not know until she fenced it.

The defendant was introduced as a witness by the plaintiff, and testified she claimed possession of all she had fenced lying West of the road.

Mr. Higgins was introduced as a witness by the plaintiff, and testified he was a civil engineer and surveyor; that he was familiar with lands described in the declaration; was on it about April, 1909, at plaintiff's request, and located the corners and boundaries of the forty, and the corners for a little fence in the N. E. corner in that part of the forty West of the Orange Park Road. He made the map filed in the case. He was on the land in September, and found the fence the corners of which he located in the Spring. It was made of woven wire and contains no gate or other opening into the enclosure. He thinks it is true that it is on the sandiest, highest portion of the land, and encloses only a few scant black jack and small pines. There was no well, or building, or barn, or clearing of any nature in this enclosure.

Mr. Sam Spencer testified for the plaintiff that he went on the land at the request of Mr. Johnson, about May, 1909, and constructed the fence about seventy-five feet spuare in the Northeast corner just West of the road, and just South of the North line of the forty; and that he intended to dig part of it up, but never did. The fence was built on a black jack knoll, and he did not build any house, sink any well or put up any buildings, or clear any part, or start to do so.

The plaintiff then rested and defendant moved the

court to instruct the jury their verdict must be for defendant on the ground that plaintiff had not shown a perfect title, nor an actual possession in himself or his grantor prior to that of defendant, and that on the evidence then introduced the verdict must be for defendant. This motion was overruled, and defendant excepted. The defendant then testified in substance as follows: She lives just East of the Orange Park road. The East line of the forty runs through my front yard, and the part of the forty lying East of the road is her front yard. About 1882, her husband died; the next year her house burned down, and she built where she now lives, and has lived there continuously ever since. The part of the forty sued for lies just across the road from her front yard, in front of her house. She does not know C. B. McClenny, never heard of him until the trial of these cases. He never did live on any part of the forty, or turpentine it, or log it, or do anything with it. No one ever lived on or cultivated or turpentined the part of the forty across the road from her house. Most of the logs were cut off that part of the forty years ago by a man named Darby, and no one has ever done anything with it since. Her boy Ed and other workman, at her request, fenced it. She thinks she fenced it four or five weeks after Mr. Johnson built a little fence about 75 feet square. She did not give Johnson permission to put the fence there. Before he did this no one ever attempted to occupy or use the land. Defendant also introduced a quit-claim deed to herself to the Southeast quarter of Southwest quarter of Section 7, Tp. 3 S. R. 26 E., executed by the widow and children of James Turknett, claiming to be the heirs of James Turknett, on the 22nd of July, 1909. This was objected to, and objection overruled, but was

afterwards stricken on motion of plaintiff. The fore-going is all the evidence in the case.

On request, the trial judge gave an affirmative charge in favor of the plaintiff, which was followed by a verdict and judgment in his favor. A motion for a new trial made by the defendant was overruled, and an exception noted.

There are ten assignments of error, covering the objections and exceptions made and taken by the defendant. Without discussing them in detail, the following will indicate our views upon the material questions presented: It is perfectly evident the plaintiff showed no documentary title to the land involved. When the deed from the McClenny's to him was made they were not in possession, and never had been in possession of the property. No title of any sort was shown in the McClenny's. The plaintiff's claim, therefore, rests upon an alleged possession by him when the defendant fenced and took possession of the land involved. The plaintiff's claim to possession is based on the single fact that sometime in May, 1909, he had some sort of a fence constructed in the Northeast corner of the land, seventy-five feet square. It was built of woven wire and without a gate or other mode of entrance, except by getting over it. There is no proof how high the fence was. Neither the land enclosed by this fence, nor any other part of the 33 acres was ever in any manner cultivated or improved by the plaintiff, for we cannot consider the fence an improvement in any proper meaning of the term. In his testimony he does not disclose any fixed purpose to do any particular thing in the way of improvement. It is true perhaps that defendant showed no title to the property. She at least is admitted to have been in possession of it when the suit was brought. Under the circumstances,

was the plaintiff's little fence enclosing about one- eighth of an acre of the 33, such a prior possession as entitled him to recover?

In the case of Seymour v. Creswell, 18 Fla. 29, text 41, this court in discussing the nature of the possession necessary for a plaintiff without title, to maintain an action of ejectment against one in possession, says: "The possession which the law contemplates, in a case where plaintiff has no title, however, is an actual possession. Some of the authorities say 'an open, notorious, exclusive and actual possession.'" In the case of L'Engle v. Reed, 27 Fla. 345, 9 South. Rep. 213, the doctrine of the foregoing case was reiterated, and it was held: "So far as the appellee is concerned, it is not shown that he or any of his predecessors in title ever cultivated or improved the land in question, or ever protected it by substantial enclosure, or has used it for the supply of fuel, or of fencing timber for the purpose of husbandry, or for the ordinary use of an occupant. All that is shown in the record in reference to any possession on the part of appellee or his predecessors is, that William S. Walker, as agent for McIntosh, had the land staked off and a plat of it made in 1881, and this agent frequently went on the land for the purpose of selling lots of it, and did make many sales after the land was platted. None of the lots were enclosed or otherwise improved than by staking them out. As to the lots in question it is not shown that either appellee or his predecessors ever had any actual possession of them further than the mapping or platting them, and this is not sufficient prior possession of the property as against defendant's actual possession." (Citing Seymour v. Creswell, 18 Fla. 29).

. In the case of Wilkins v. Pensacola City, 36 Fla. 36,

18 South. Rep. 20, in passing on the essentials of a title by adverse possession, the court says that such possession must be continuous, unbroken, open, notorious and actual, and the limits, location and extent of the occupancy must be definitely and clearly established by affirmative proof, and cannot be established or extended by presumption. In the case of Bass v. Ramos, 58 Fla. 161, 50 South. Rep. 945, it is asserted "that in order to recover the possession of lands by means of an action of ejectment, the plaintiff must have either a title to the lands, with a present right of continued possession, or must have had actual *bona fide* possession of the lands, with a right to maintain a continued possession when ousted by defendant, and a present right to the possession when the action was begun," citing a number of Florida cases. See Jackson v. Haisley, 35 Fla. 587, text 605.

In 9th Ballard's Law of Real Property, §24, in a discussion of what constitutes adverse possession, it is said: "If an enclosure, of itself, is relied upon to establish occupancy, it must be of a substantial character, in the sense of being appropriate and effective to reasonably fit the premises for some use to which they are adapted." In Watrous v. Morrison, 33 Fla. 261, 14 South. Rep. 805, it is held that the term notorious sometimes used in defining adverse possession, means that the possession or character of the holding must in its nature possess such elements of notoriety that the owners may be presumed to have notice of it and its extent. In the case of Perry Naval Stores Company v. Griffin, 57 Fla. 133, 49 South. Rep. 554, it was held that the fact that about four acres of a tract of three hundred and sixty acres of land enclosed in the field of an adjoining owner who is agent of the plaintiff, is not evidence of the possession

of the remainder which is not enclosed or cultivated. An adverse claimant must keep his flag flying so that the true owner may be informed of his presence and if so disposed may sue him to recover the possession of the property. Hyer v. Griffin, 55 Fla. 560, 46 South. Rep. 635; Gould v. Carr, 33 Fla. 523, 15 South. Rep. 259.

It is not certain from the evidence whether the deed from the McClenny's to the plaintiff was executed and delivered before or after the defendant took possession of the whole tract of thirty-three acres. If the plaintiff claims that under said deed as color of title he was in possession of the whole tract when defendant entered, the burden was on him to show it. Reverting to the little fence 75 feet square, no height proven, without a gate or other method of ingress or egress, no kind of occupation or improvement in or outside of it on the land in controversy, the fence built on a scrubby knoll where it is probable it was not notoriously conspicuous so that it could be easily seen by the owner or any one else,—these facts do not in our judgment show such a possession as will sustain this suit against the defendant. We therefore think the motion for a new trial should have been granted.

The judgment below is reversed.

SHACKLEFORD, C. J., AND TAYLOR, COCKRELL AND WHITFIELD, J. J., concur.